People v Pinkard (2021 NY Slip Op 00726)





People v Pinkard


2021 NY Slip Op 00726


Decided on February 5, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 5, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., NEMOYER, CURRAN, WINSLOW, AND BANNISTER, JJ.


871 KA 18-02212

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
ALVIN RAY PINKARD, SR., DEFENDANT-APPELLANT. 






LINDSEY M. PIEPER, ROCHESTER, FOR DEFENDANT-APPELLANT. 
MICHAEL D. CALARCO, DISTRICT ATTORNEY, LYONS (R. MICHAEL TANTILLO OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Wayne County Court (John B. Nesbitt, J.), rendered July 19, 2018. The judgment convicted defendant upon a jury verdict of murder in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]), defendant contends that he was deprived of his constitutional right to an impartial verdict because the jurors submitted questions to County Court during the trial, and the court failed to inquire regarding potential juror misconduct, i.e., whether the jury had engaged in premature deliberations. Defendant failed to preserve his contention for our review (see generally People v Hicks, 6 NY3d 737, 739 [2005]; People v Black, 137 AD3d 1679, 1679 [4th Dept 2016], lv denied 27 NY3d 1128 [2016], reconsideration denied 28 NY3d 1026 [2016]). During the trial, the jurors told the court that they were unable to hear a question asked of a witness by the prosecutor and they asked to have that question repeated. The jurors also asked when they could submit questions. In both instances, the court responded in the manner that was requested and consented to by defense counsel, and the court gave an additional instruction to the jurors reminding them that they were not to begin deliberations prior to being charged by the court. Thus, defendant's contention is unpreserved inasmuch as defendant obtained the relief that he requested at the time of trial and made no objection to the court's responses to the jurors' questions (see generally Hicks, 6 NY3d at 739). We decline to exercise our power to review the unpreserved contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Defendant contends that the verdict is against the weight of the evidence. Although an acquittal would not have been unreasonable (see People v Bleakley, 69 NY2d 490, 495 [1987]), we conclude that, viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), the verdict is not against the weight of the evidence (see People v Williams, 45 AD3d 905, 905-906 [3d Dept 2007], lv denied 10 NY3d 818 [2008]; see generally Bleakley, 69 NY2d at 495).
Here, two informants testified at trial regarding separate conversations that they had with defendant. During those conversations, defendant talked about killing the victim, and both informants testified that defendant had complained about his soured relationship with the victim and about no longer living in the house that he loved. Defendant told one of the informants that he "had no choice but to kill the bitch," and he told the other informant that "he just popped" and "stuck the bitch." The testimony of the informants was corroborated by the testimony of the medical examiners that there was a puncture or stab wound to the victim's neck. Although the informants had criminal histories, they were questioned about their histories on direct and cross-examination and it is well settled that "[r]esolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury" (People v Witherspoon, 66 AD3d 1456, 1457 [4th Dept 2009], lv denied 13 NY3d 942 [2010] [*2][internal quotation marks omitted]). Furthermore, the testimony of the jailhouse informants "was not rendered incredible as a matter of law . . . by the fact that [they] had criminal histories and [one of them had] received favorable treatment in exchange for [his] testimony" (People v Resto, 147 AD3d 1331, 1334 [4th Dept 2017], lv denied 29 NY3d 1000 [2017], reconsideration denied 29 NY3d 1094 [2017] [internal quotation marks omitted]; see generally People v Huff, 133 AD3d 1223, 1226 [4th Dept 2015], lv denied 27 NY3d 999 [2016]).
In addition, text messages between defendant and the victim prior to her death corroborated the testimony of the informants that defendant was upset about how his relationship with the victim had deteriorated, as did the testimony and documentary evidence entered through the victim's attorney concerning, inter alia, an order of protection issued against defendant. Moreover, several of the victim's neighbors testified that they saw defendant or his red pickup truck in the vicinity of the victim's home on the day that her body was discovered at that location.
Finally, we reject defendant's contention that the court erred by summarily denying his motion for substitute counsel and failing to make a minimal inquiry into his request, thereby depriving him of effective assistance of counsel. Contrary to defendant's contention, the record establishes that the court made more than the requisite "minimal inquiry into defendant's objections before determining that there was no good cause for the substitution of counsel" (People v Small, 166 AD3d 1471, 1471 [4th Dept 2018], lv denied 32 NY3d 1177 [2019]; see generally People v Porto, 16 NY3d 93, 100 [2010]; People v
Sides, 75 NY2d 822, 825 [1990]).
Entered: February 5, 2021
Mark W. Bennett
Clerk of the Court